UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| DIVERSE ENTERPRISES, LTD. CO., LLC; QUICK-SOL GLOBAL, LLC; and LAWRENCE P. LANCASTER, Individually <br><br> Plaintiffs/Counter-Defendants, <br><br> And <br><br> MANAGERIAL RESOURCES, INC.; And STEPHEN MARTIN, individually <br><br> Counter-Defendants <br><br> v. <br><br> BEYOND INTERNATIONAL, INC.; and PABLO GOMEZ, individually <br><br> Defendants/Counter-Plaintiffs | Civil No. SA-16-CV-1036-RCL |

## MEMORANDUM OPINION IN SUPPORT OF

## ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL ARBITRATION

## AND STAY LAWSUIT PENDING ARBITRATION

The Court now considers Plaintiffs' Memorandum in Support of Motion to Compel Arbitration & Stay Lawsuit Pending Arbitration (ECF #13) ("Motion to Compel"). For the reasons given below, the Court **GRANTS** Plaintiffs' Motion to Compel.

1

I.  **Background**

In 2004, Plaintiff Diverse Enterprises, Ltd. Co., LLC ("Diverse") entered into a Distribution Agreement with Defendant Beyond International, Inc. ("Beyond"). (ECF #23, ¶9; ECF #19, ¶4). Pursuant to the Distribution Agreement, Beyond was to be the exclusive distributor of Quick-Sol (a synthetic fertilizer manufactured by Diverse) in all Latin American countries except Ecuador. (ECF #23, ¶9; ECF #19, ¶4). The Distribution Agreement contained the following arbitration clause:

### ARTICLE XII

> The Parties agree that any claim or controversy arising out of or relating to this Agreement, the performance, or breach of any of the provisions hereof shall be referred to and settled under the rules of the American Arbitration Association ("AAA") by one or more arbitrators appointed in accordance with the rules of the AAA. All arbitration shall be conducted in San Antonio, Texas or such other place as the parties may mutually agree upon and the judgment upon the award rendered shall be final and may be entered in any court having jurisdiction over the parties.

On October 7, 2005, Diverse and Beyond entered into a second agreement ("Amendment") that amended the Distribution Agreement. (ECF #23-1, Exhibit B). In addition to Diverse and Beyond, Plaintiff Lancaster and Defendant Gomez are also parties to the Amendment. (*Id.*). Pursuant to the Amendment, Beyond became the "worldwide exclusive representative [distributor] for all products manufactured" by Diverse, including Quick-Sol. (*Id.*).

Over time, the relationship between Plaintiffs and Defendants broke down. Plaintiffs allege that Beyond breached the Distribution Agreement and the worldwide distributor component of the Amendment. (*Id.* ¶24). Therefore, Plaintiffs attempted to revoke Beyond's status as the exclusive worldwide distributor of Quick-Sol and, pursuant to the advice of Counter-Defendant Managerial Resources, Inc. ("MRI"), formed Defendant Quick-Sol Global, LLC ("QSG") for the

purpose of consolidating all Quick-Sol related assets owned by Diverse, Beyond, Lancaster, and Gomez. (*Id.* ¶¶24, 28). The fallout from this course of action led to the present litigation.

Plaintiffs commenced the this lawsuit on August 29, 2016, in the County Court at Law of Kendall County, Texas. (ECF # 1-1). In their complaint, Plaintiffs asserted the following causes of action: (1) declaratory judgments concerning the validity of the Distribution Agreement and the Amendment, and the ownership of the various business entities and intellectual property rights related to Quick-Sol, (2) common law fraud, (3) tortious interference with prospective relations, (4) unlawful appropriation of name or likeness, and (5) common law trademark infringement. (ECF #1, ¶¶6.1–10.1). Defendants removed the action to this Court on October 17, 2016. (ECF #1). Defendants filed a partial motion to dismiss on October 31, 2016, seeking to dismiss Plaintiffs' second and third claims (common law fraud and tortious interference). (ECF #10). On November 13, 2016, Plaintiffs' counsel informed Defendants' counsel that Plaintiffs would be unable to meet the deadline to respond to the partial motion to dismiss and asked if Defendants would be willing to extend the deadline to November 28, 2016. (ECF #19-3). Defendants' counsel agreed to the extension. (*Id.*).

But Plaintiffs did not file a response on November 28. In fact, Plaintiffs never filed a response at all. Instead, on December 8, 2016, the parties filed a joint motion informing the Court that Plaintiffs did not oppose Defendants' partial motion to dismiss, (ECF #15), which was then granted. (ECF #20). That same day, Plaintiffs filed their motion to compel arbitration of Plaintiffs' remaining causes of actions pursuant to the Distribution Agreement's arbitration clause. (ECF #13). Defendants filed their response to the motion to compel, on December 27, 2016, arguing that Plaintiffs waived the right to compel arbitration by substantially invoking the judicial process

to the Defendants' prejudice and that certain of Plaintiffs' claims were not subject to arbitration. (ECF #19).

Plaintiffs never filed a reply to that response. Instead, on January 20, 2017, Plaintiffs filed their First Amended Complaint. (ECF #23). The amended complaint is a (nearly) verbatim repetition of Plaintiffs' original complaint in state court. The only substantive differences are that the amended complaint (1) omits the common law fraud and tortious interference claims that were already dismissed and (2) states that the relief Plaintiffs seek is "intended for arbitration," "invoking the **arbitration provision contract in question**" (emphasis in original) and referencing the earlier motion to compel. (*Id.* ¶40). Because of this, the Court will treat the amended complaint as providing supplemental briefing for Plaintiffs' motion to compel. (ECF #13)

Defendants answered the amended complaint on February 22, 2017. (ECF # 30). In their answer, Defendants also asserted several counterclaims against Plaintiffs and Counter-Defendants. Plaintiffs answered Defendants' counterclaims on March 24, 2017. (ECF #33). In their answer, Plaintiffs again petitioned the Court to grant their earlier motion to compel, referring to it by its docket number. (*See* ECF #13). In early May, Plaintiffs moved for and received leave to file amended responses to Defendants' counterclaims. (ECF #37, 39).[1] The Court still has not received Plaintiffs' amended responses.

## II. The Scope of Plaintiffs' Motion to Compel Arbitration

The Court first addresses the scope of Plaintiffs' motion to compel. On its face, this question seems simple. By its own terms, the motion to compel asks this Court to compel Defendants to arbitrate the following three causes of action: (1) Plaintiffs' declaratory judgment action, (2) Plaintiffs' cause of action for unlawful appropriation of name or likeness, and (3)

---

[1] Normally, it would not be necessary to go through the filing history of a case in such exhaustive detail. But it is appropriate in this case to help more accurately measure the prejudice Defendants' encountered.

4

Plaintiffs' cause of action for common law trademark infringement. (ECF #13, ¶4). This position is reiterated in Plaintiffs' First Amended Complaint, in which Plaintiff again asked the Court to compel arbitration for only these three cause of action. (ECF #23, ¶¶40–42).[2] Thus, it is clear that all of Plaintiffs' remaining claims against Defendants are within the scope of Plaintiffs' motion to compel.

Less clear is whether Plaintiffs have moved to arbitrate Defendants' counterclaims. In Plaintiffs' Answer to Defendants' Counterclaims, Plaintiffs mention their motion to compel in their section on affirmative defenses. (ECF #33, pg. 6). And at the end of their answer, Plaintiffs again request that the Court grant their original motion to compel, referring to it by docket number. (*Id.*). It is therefore unclear to the Court whether Plaintiffs intended, by ending their answer in this fashion, to ask the Court to compel arbitration of Defendants' counterclaims or not. Perhaps the issue would have been clearer to the Court had Plaintiffs filed their entire answer. But Plaintiffs have not done so despite the Court granting them leave to do so more than four months ago. As such, the Court must do the best it can with what it has.

The Court finds that Plaintiffs' invocation of its original motion to compel in Plaintiffs' answer should not be interpreted as a motion to compel arbitration of Defendants' counterclaims. First, while the motion to compel is mentioned in Plaintiffs' section on affirmative defenses, it is not mentioned as an affirmative defense itself, but rather as a limitation on one of Counter-Defendant Stephen Martin's other affirmative defenses. (*Id.*). Second, the Court finds that the overall structure and content of Plaintiffs' answer evidences a lack of intent to request that the

---

[2] Because the amended complaint is an almost verbatim repetition of the original complaint and because the amended complaint references the Motion to Compel Arbitration, the Court finds that the amended complaint did not change the substance of the litigation. Therefore, the Court will not treat the Motion to Compel Arbitration or Defendants' response as moot. (*See* 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2011) (observing that, when a new pleading raises the same issues as the old pleading, a court may consider a motion addressed to the old pleading "as being addressed to the amended pleading" to prevent the needless re-filing of substantively identical motions).

5

Court compel arbitration of Defendants' counterclaims. Plaintiffs' answer is styled as just that—an answer. Plaintiffs' filing is called an answer in its title. The filing has the form and function of an answer, consisting of admissions and denials. The answer in no way resembles a motion to compel arbitration. Indeed, had Plaintiffs intended to petition the Court to compel arbitration of Defendants' counterclaims, they could simply have filed another motion to compel, or at least made an explicit request in their answer. Instead, Plaintiffs decided to answer the counterclaims with no clear expression of a desire to arbitrate them.

For these reasons, the Court finds that Plaintiffs' motion to compel only contemplates compelling Defendants to arbitrate Plaintiffs' remaining causes of action and not Defendants' counterclaims. At this time, therefore, the Court does not consider whether Defendants' counterclaims would, upon motion, be arbitrable.

### III. The Scope of the Arbitration Clause

Defendants argue that there are persons/parties and claims in the motion to compel that are not subject to the Distribution Agreement's arbitration clause. (ECF # 19, ¶¶24–28; ECF #30, ¶40). The Court will first address what persons/parties are subject to the arbitration clause. The Court will then address what claims are subject to the arbitration clause.

#### A. Persons and Parties Subject to the Arbitration Clause

"Arbitration under the [FAA] is a matter of consent, not coercion." (*E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) (quoting *Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989))). Therefore, if a party has not agreed to arbitrate—through a valid contractual arbitration provision, consent, or otherwise—then the party cannot be made to arbitrate. Defendants argue that "the only parties in the case who are bound to the arbitration clause of the [Distribution Agreement] are Plaintiff Diverse and Defendant

6

Beyond International." (ECF #19, ¶24). Defendant Pablo Gomez, they argue, has not agreed to arbitrate because he is neither a party to the Distribution Agreement nor does he consent to arbitrate with any of the Plaintiffs. (*Id.* ¶24–25). The Court Disagrees.

Gomez is a party to the Distribution Agreement and the arbitration clause therein. Gomez was not a named party or signatory to the Distribution Agreement as it was in 2004. (*See* ECF #19-2, Exhibit A). But Gomez is a named party and signatory to the Amendment to the Distribution Agreement dated October 7, 2005. (*Id.* Exhibit B). The Amendment states that "[t]he following points are to be *added to the existing agreement between parties.*" (*Id.* (emphasis added)). The "existing agreement" clearly refers to the Distribution Agreement, as no other agreement is known to have existed between any of the parties at that time. The substance of the Amendment, then, was "added to" and became a part of the Distribution Agreement, becoming subject to all portions of the Distribution Agreement not inconsistent with the Amendment, including the arbitration clause. That is how amendments to contracts work.

The same goes for the parties to the Amendment. The parties to the Amendment include the parties to the original Distribution Agreement—Beyond and Diverse—and also include Lancaster and Gomez in their individual capacities. (*Id.*). By signing onto the Amendment in their individual capacities, both Lancaster and Gomez were "added to the existing agreement between the parties" and are bound by the arbitration clause therein. Therefore, Beyond, Diverse, Lancaster, and Gomez can all be compelled to arbitrate claims arising from or related to both the original Distribution Agreement and the Amendment.

The Court now turns its attention to Plaintiff QSG. Defendants argue that they "did not enter into an agreement to arbitrate with [QSG], and cannot be compelled to agree to arbitrate with [QSG]." (*Id.* ¶26). It is true that QSG, not having existed in 2004 or 2005, is not a signatory to

7

the arbitration clause. However, the ownership of QSG is a major facet of this case. Plaintiffs seek a judicial declaration that Defendants own no interest in QSG. (ECF #23, ¶41. Defendants contest this, arguing that they do own an interest in QSG. (ECF #30, ¶¶41.4, 41.6). Defendants' basis for arguing that they own an interest in QSG is, in part, that the Amendment entitles them to an ownership interest. (ECF #10, ¶3 ("Gomez subsequently requested 50% ownership of QSG consistent with the . . . Amendment."); ECF #19-2, ¶9). So Defendants seek to have it both ways: Defendants seek, on the one hand to assert ownership in QSG and its assets pursuant to the Amendment, to which QSG is a non-signatory, but, on the other hand, deny arbitration's applicability because QSG is a non-signatory. Defendants cannot have it both ways, seeking to benefit from one part of their contract while avoiding the burden of another part, and both to QSG's detriment. By claiming ownership of QSG pursuant to the Amendment, they bind themselves to arbitrate that claim pursuant to the arbitration clause as QSG requests.

Alternatively, the Court finds that Gomez consented to arbitrate claims against QSG by being a party to the Amendment. The Amendment states that it "is a private agreement between DIVERSE and BEYOND." (ECF #19-2). DIVERSE and BEYOND are both defined by the Amendment to include "any other entity related to the business between the parties." (*Id.*). Though it did not exist at the time, QSG is an entity related to the business between the parties, with the purpose of "consolidating assets held by Diverse, Beyond, Lancaster and Gomez that were associated with the manufacture, sale and distribution of Quick-Sol." (ECF #23, ¶28). And the Amendment specifically contemplated the creation of such entities in the future. (ECF #19-2, ¶9). Because the Amendment specifically contemplates the creation of future entities like QSG, and because future entities like QSG are included by the Amendment in the definitions of the respective parties, and because the Amendment is incorporated into the original Distribution Agreement and

subject to the arbitration clause therein, the Court finds that QSG is a party as contemplated by the arbitration clause. Therefore, QSG is party to the arbitration clause and may invoke it to compel Defendants to arbitrate.

### B. Claims Subject to the Arbitration Clause

Defendants argue that there are claims in this case that are not subject to the Distribution Agreement's arbitration clause. Foremost among these are Defendants' counterclaims. (ECF #19, ¶27; ECF#30, ¶40). Because Defendants' counterclaims are not within the scope of Plaintiffs' motion to compel, (see section II above), the Court need not, and does not, reach the issue of whether the counterclaims are subject to the arbitration clause. The question, then, is which, if any, of Plaintiffs' remaining causes of action are arbitrable.

This is not a question for this Court to decide. "The question of whether the parties have submitted a particular dispute to arbitration, *i.e.* the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" (*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 79 (2002) (quoting *AT&T Tech., Inc. v. Comms. Workers*, 475 U.S. 643, 649 (1986))). When the parties clearly and unmistakably provide otherwise, the question of arbitrability of claims may be taken from the courts and given to an arbitrator. (*Id.*). Most federal courts have held that the "clear and unmistakable" standard is met "when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability." (*Contec Corp. v. Remote Solution Co., Ltd.*, 398 F.3d 205, 208 (2d Cir. 2005); *see also Terminix Int'l Co., L.P. v. Palmer Ranch L.P.*, 432 F.3d 1327 (11th Cir. 2005); *FSC Securities Corp. v. Freel*, 14 F.3d 1310 (8th Cir. 1994); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469 (1 Cir. 1989); *Citifinancial, Inc. v. Newton*, 359 F.Supp.2d 545 (S.D. Miss. 2005)). The Distribution Agreement's arbitration clause explicitly incorporates "the rules of the American Abritration

9

Association" ("AAA"). (ECF #19-1). AAA Commercial Arbitration Rule R-7(a) provides as follows:

> The arbitrator shall have the power to rule on his or her own jurisdiction, *including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.*

(American Arbitration Association, *Commercial Arbitration Rules and Mediation Procedures*, (July 1, 2016), https://www.adr.org/sites/default/files/Commercial%20Rules.pdf). The plain text of this rule authorizes the arbitrator to decide issues regarding the existence, validity, scope, and arbitrability of a dispute. Therefore, the arbitration clause "explicitly incorporate[s] rules that empower an arbitrator to decide issues of arbitrability." (*Contec. Corp.*, 398 F.3d at 208).

This, however, is not enough to remove the issue of arbitrability from this Court. Rather, the majority federal view applies only "in those cases where the arbitration clause generally provides for arbitration of all disputes." (*James &Jackson, LLC*, 906 A.2d 76, 80 (Del. 2006) (citing *Terminix Int'l. Co., LP*, 432 F.3d at 1329 (arbitration clauses covered "any controversy or claim . . . arising out of or relating to" the agreement); *Contec Corp.*, 398 F.3d at 208 (arbitration clause covered "any controversy arising with respect to this Agreement"); *Citifinancial, Inc.*, 359 F.Supp.2d at 549 (arbitration clause provided that "any Claim . . . shall be resolved by binding arbitration")). Here, the Distribution Agreement's arbitration clause states that the parties "agree that *any claim or controversy arising out of or relating to this Agreement* . . . shall be referred to" arbitration. (ECF #19-1). The clause clearly provides for the arbitration of all disputes. Therefore, the majority federal view applies and the question of whether Plaintiffs' claims are arbitrable must itself be decided in arbitration unless Plaintiffs waived their right to arbitrate.

IV. **Plaintiffs Did Not Waive Their Right to Compel Arbitration**

Defendants argue that even if Plaintiffs' claims are otherwise arbitrable, Plaintiffs waived their right to arbitrate. The right to arbitrate a dispute is a contractual right. Like all contractual rights, it may be waived. (*See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687; *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (2009)). Given the strong federal policy favoring arbitration, however, "the party claiming waiver has a heavy burden." (*Frye v. Paine, Webber, Jackson & Curtis, Inc.*, 877 F.2d 396, 398 (1989)). A party waives its right to arbitrate when the party "substantially invokes the judicial process to the detriment or prejudice of the other party." (*Id.* (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986))). Determining whether Plaintiffs have waived their right to arbitrate, then, is a two-part analysis. First, the Court must determine whether Plaintiffs substantially invoked the judicial process. And second, the Court must determine whether Defendants were prejudiced by Plaintiffs' invocation.

The Court now finds that while Plaintiffs substantially invoked the judicial process by initially filing their lawsuit in Texas state court, the Defendants have not been substantially prejudiced thereby. Therefore, Plaintiffs did not waive their right to compel arbitration of their claims against Defendants.

### A. Plaintiffs Substantially Invoked the Judicial Process

The Fifth Circuit has found "that the act of a plaintiff filing suit without asserting an arbitration clause constitutes substantial invocation of the judicial process, unless an exception applies." (*Nicholas*, 565 F.3d at 908). Plaintiffs' original complaint included no mention of or demands for arbitration whatsoever. (*See generally* ECF #1-1). And Plaintiffs cannot (and do not) claim that they were ignorant of the arbitration clause when they filed their original complaint because Plaintiffs attached the Distribution Agreement and its very prominent arbitration clause

11

to the original complaint itself. (*Id.*) Therefore, unless some exception applies to the present case, the Court must find that Plaintiffs substantially invoked the judicial process.

There is no exhaustive list of exceptions to the general rule that filing suit without asserting an arbitration clause constitutes substantial invocation of the judicial process. (*See id.* at 909). Rather, every case must be examined to see whether its unique facts merit an exception. Exceptions have been found in cases where a plaintiff files suit for the sole purpose of determining whether a valid arbitration agreement exists, (*E.g. Republic Ins. Co. v. Paico Receivables LLC*, 383 F.3d 341, 345 (5th Cir. 2004)); in lawsuits filed for the purpose of obtaining injunctive relief pending arbitration, (*E.g. Joseph Chris Pers. Servs. Inc. v. Rossi*, 249 Fed. App'x. 988, 991 (5th Cir. 2001)); and where the arbitration agreement / contract in question specifically permits a certain type of claim to go forward (*id.*).

None of these enumerated exceptions applies to the case now before us. Plaintiffs' original complaint did not seek to determine the validity of the arbitration clause in the Distribution Agreement. Again, it did not address arbitration at all. And while Plaintiffs' first cause of action sought declaratory judgments finding that the entire distribution Agreement was terminated, it did not challenge the initial validity of the arbitration provision. (ECF #1-1, ¶6.1).

The original complaint also sought no injunctions against Defendants pending arbitration. Rather, Plaintiffs' first cause of action sought declaratory judgments concerning the ultimate statuses of the contracts, business, and intellectual property at issue. (*Id.*). Plaintiffs' remaining causes of action did not even fall into the realm of equity. Instead, Plaintiffs' sought economic damages from Defendants. (*Id.* ¶11.1(1)). And Plaintiffs' did not request that an arbitrator grant these money damages, praying instead that "[t]he Court issue a judgment in favor

of [Plaintiffs] which [a]wards [Plaintiffs] economic damages." (*Id.* ¶12.1(1)). Thus, the exception for injunctive relief pending arbitration does not apply here.

Neither the arbitration provision of the Distribution Agreement nor any other portion of the Distribution Agreement or the Amendment makes any special allowances for claims that may be pursued in court rather than in arbitration. The arbitration clause sweeps very broadly, encompassing "*any* claim or controversy arising out of or" even merely "relating to" the Distribution Agreement or the performance or breach thereof. (ECF #23, ¶40). No explicit exception allows for certain classes of suit to be brought in court.

The Court must therefore ask whether the factual circumstances presented in this case merit a new exception to the general rule. Plaintiffs do not argue for any new exceptions in their own briefing. The Court likewise sees nothing remarkable in the facts of this case that merit finding that Plaintiffs did not, by initially filing their suit in state court without any mention of or petition for arbitration, substantially invoke the judicial process. Plaintiffs, then, substantially invoked the judicial process when they initially filed suit.

In the Seventh Circuit, this finding alone would be enough to conclude that Plaintiffs waived the right to arbitrate. (*See Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 390 (7th Cir. 1995) ("an election to proceed before a nonarbitral tribunal . . . is a presumptive waiver of the right to arbitrate")). However, the Fifth Circuit still requires a showing of prejudice to the nonmoving party to sustain a finding of waiver. (*Nicholas*, 565 F.3d at 908).

### B. Defendants Were Not Sufficiently Prejudiced by Plaintiffs' Delayed Motion to Compel Arbitration

In order for the Plaintiffs to waive their right to arbitrate their claims, their actions must have prejudiced the Defendants. The prejudice with which the Court is concerned is "the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the

party's opponent forces it to litigate an issue and later seeks to arbitrate the same issue." (*Petroleum Pipe Americas Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) (quoting *Republic*, 383 F.3d at 346)). Mere delay in moving to compel arbitration is not, on its own, enough to establish prejudice to the non-moving party. (*Nicholas*, 565 F.3d at 910). However, an unexcused delay may contribute to a finding of prejudice. (*Id.*). "Three factors are particularly relevant to the prejudice determination: (1) whether discovery occurred relating to arbitrable claims; (2) the time and expense incurred in defending against a motion for summary judgment; and (3) a party's failure to timely assert its right to arbitrate." (*Petroleum Pipe*, 575 F.3d at 480 (internal citation omitted)). The Court will call these the *Petroleum Pipe* factors. These factors are particularly relevant, but are not the only factors the Court can consider. Ultimately, the question is whether the party seeking arbitration's "participation in the litigation has been so substantial that compelling arbitration would prejudice the other party." (*Cargill Ferrous Intern. V. SEA PHOENIX MV*, 325 F.3d 695, 700 (5th Cir. 2003)).

The first two *Petroleum Pipe* factors for establishing prejudice are not satisfied in this case. Defendants concede that "discovery has not been exchanged." (ECF #19, ¶22). As there has been no discovery in this case, there also has been no need to defend against a motion for summary judgment.

As for the third *Petroleum Pipe* factor—a party's failure to timely asserts its right to arbitrate—while Plaintiffs were certainly dilatory in filing their motion to compel, the 101 days (slightly more than three months) between their initially filing the case in Texas state court and their moving to compel arbitration is not so great an amount of time as to persuade the court that a finding of prejudice is merited. The Fifth Circuit has found far greater periods of time to be insufficient to waive the right to arbitration, though mostly in cases where the defendant, rather

than the plaintiff, sought to compel arbitration. (See, e.g., *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991) (no waiver where the movant waited 13 months to move to compel arbitration and the parties had engaged in some discovery); *Tenneco Resins, Inc. v. Davy Intern., AG*, 770 F.2d 416 (5th Cir. 1985) (no waiver where the movant waited eight months to move to compel arbitration and also participated in discovery). But even when considering only cases in which the plaintiff sought to compel arbitration, the Court can find no Fifth Circuit case in which a delay of only three months was sufficient to establish prejudice. (*C.f. Nicholas*, 565 F.3d at 910 (in which a 10-month delay in asserting the right to arbitrate was found to have prejudiced the non-movant, but extensive discovery and motions practice had also occurred). For that reason, the Court finds that none of the *Petroleum Pipe* factors weigh in favor of finding prejudice in this case.

Defendants assert that other circumstances beyond the *Petroleum Pipe* factors merit finding that they have been prejudiced by Plaintiffs' delay in moving to compel arbitration. The Court will address these circumstances in turn, recognizing as it does that Defendants do not argue that any one of these circumstances on its own is sufficient to constitute prejudice, but that taken as a whole they may be.

Defendants say they were prejudiced because they are residents of Florida and hired Texas counsel. (ECF #19, ¶22). The Court gives no weight to this argument. The arbitration clause in the Distribution Agreement states that any arbitration between the parties would "be conducted in San Antonio, Texas." (ECF #23-1). Thus, Defendants would have had to come to Texas and, most likely, hire Texas counsel even if Plaintiffs had moved to compel arbitration at the outset rather than file the present suit.

Defendants say they were prejudiced because they removed the case to federal court. (ECF #19, ¶22). The Court gives little weight to this. While there is some expense and annoyance

15

involved in removing an eligible case to federal court, the process is easy (especially in a straightforward diversity case such as this one), requiring neither briefing nor court approval. Further, removing this case to federal court did not in any way prejudice the Defendants' legal position.

Defendants say they were prejudiced because they filed their partial motion to dismiss. (*Id.*). This argument is more persuasive, as preparing a motion to dismiss can involve considerable time, effort, and expense. The Court takes this into consideration.

Defendants say they were prejudiced because "Plaintiffs' counsel was not admitted to practice in the Western District of Texas." (*Id.*). The Court fails to see how this in any way prejudiced Defendants.

Defendants say they were prejudiced because they "advised Plaintiffs' counsel about a potential conflict of interest, causing Plaintiffs' counsel to withdraw." (*Id.*). Again, the Court fails to see how this in any way prejudiced Defendants. Advising opposing counsel of a potential conflict of interest did not harm Defendants' legal position and may have been a necessary course of action in an arbitration context as well.

Defendants say they were prejudiced because Plaintiffs' counsel first requested an extension of the time in which to respond to Defendants' motion to dismiss, then missed the extended deadline, and then decided not to oppose the motion to dismiss at all. (*Id.*). While this may represent yet another example of Plaintiffs' counsel's disappointing habit of failing to make timely filings, Defendants were not prejudiced thereby. The delay may have been an annoyance, but Defendants' legal position was not harmed nor should any significant additional expense have been incurred by reason of having to wait. If anything, Plaintiffs' decision not to contest Defendants' motion to dismiss ultimately inured to Defendants' benefit and saved them the

expense of filing a reply brief. Therefore, any prejudice caused by reason of filing the motion to dismiss was minimized.

Defendants say they were prejudiced by Plaintiffs voluntary filing of their amended complaint, which required Defendants to assert "counterclaims and third party actions against additional parties." (ECF #30, ¶40). That Plaintiffs voluntarily filed their amended complaint was a strange course of action, but it holds little weight with the Court. As mentioned previously, the amended complaint added nothing of substance to this litigation as it repeated, almost verbatim, the original complaint, but with a demand for arbitration (which already existed in the motion to compel) added in. Therefore, no prejudice derives from it. However, the Court does take the additional time and expense associated with crafting and filing Defendants' counterclaims into consideration.

Finally, Defendants say they will be further prejudiced if Plaintiffs' claims are submitted to arbitration because it may be forced to maintain parallel proceedings in both arbitration and this Court. (ECF #19, ¶24). The Court gives little weight to this argument. The Supreme Court has clearly held that the Federal Arbitration Act "requires that [courts] rigorously enforce agreements to arbitrate, even if the result is 'piecemeal' litigation." (*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). Therefore, while maintaining parallel proceedings will certainly inconvenience Defendants, that inconvenience is contemplated by the Federal Arbitration Act and does not give rise to prejudice, especially given the option of staying this lawsuit pending arbitration. The case that Defendants cite in support of their argument that parallel proceedings should be equated with cognizable prejudice, *Lauzon v. Pulte Homes, Inc.*, No. SA-12-CV-177-XR, 2012 WL 4795994 (W.D. Tex. Oct 9, 2012), is inapposite. *Lauzon* involved not a motion to compel arbitration, but a motion for leave to file an amended complaint

without which the plaintiffs would be forced to maintain parallel suits in two different courts. (*Id.* at *1). As such, the strong federal policy in favor of arbitration was not at issue in *Lauzon*.[3]

The Court has now reviewed the *Petroleum Pipe* factors and the additional circumstances set forth by Defendants. Taking all of these into consideration, the Court finds that the Defendants "simply have not presented enough evidence that [Plaintiffs'] delay materially prejudiced them." (*Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 578 (5th Cir. 1991)). In reaching this conclusion, the Court places great weight on the fact that none of the *Petroleum Pipe* factors weigh in favor of a finding of prejudice. And while the additional circumstances certainly resulted in a degree of inconvenience and expense, they are simply "insufficient to" establish prejudice and "overcome the strong federal presumption in favor of arbitration" (*Id.*). Because Defendants' have not been prejudiced by Plaintiffs' delay in moving to compel arbitration, Plaintiffs did not waive their right to arbitrate.

## V. Request to Stay Case Pending Arbitration

Having determined that Defendants must be compelled to arbitrate Plaintiffs' claims against them, the Court now addresses Plaintiffs' motion to stay this lawsuit pending arbitration. The Court will grant Plaintiffs' motion to stay because the Court, for now, retains jurisdiction over Defendants' counterclaims. The Court does not want to impose upon Defendants the burden of litigating in two forums simultaneously nor increase the risk of subjecting Defendants to inconsistent judgments resulting from simultaneous parallel litigation. Therefore, the Court will stay this lawsuit pending arbitration.

---

[3] At least, the strong federal policy in favor of arbitration was not at issue in that phase of the *Lauzon* litigation. One of the *Lauzon* defendants filed a successful motion to compel arbitration earlier in the litigation, resulting in the plaintiffs being forced to maintain parallel proceedings in arbitration and federal court.

18

## VI. Conclusion

For the reasons explained, the Court finds the following: (1) that Plaintiffs' Motion to Compel Arbitration encompasses only their claims against Defendants' and not Defendants' counterclaims; (2) that all of the plaintiffs and defendants are subject to the Distribution Agreement's arbitration clause; (3) that the arbitrability of Plaintiffs' claims must be determined, in the first instance, by an arbitrator; (4) that Plaintiffs did not waive their right to arbitrate; and (5) that this lawsuit should, in fairness to Defendants, be stayed pending arbitration.

Accordingly, the Court **GRANTS** Plaintiffs' Motion to Compel Arbitration & Stay Lawsuit Pending Arbitration (ECF #13). The Court **ORDERS** Plaintiffs to arbitrate their claims against Defendants in accordance with the arbitration provision in the Distribution Agreement. Further, the Court **ORDERS** this lawsuit stayed pending the successful completion of arbitration.

**It is so ordered.**

SIGNED this ___22nd___ day of September, 2017.

HONORABLE ROYCE LAMBERTH
UNITED STATES DISTRICT JUDGE